# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

CASEY V. LAMB,

                Plaintiff,

                                            Case No. 17-CV-383

v.

ADVANCED CORRECTIONAL
HEALTHCARE, INC., *et al.*,

                Defendants.

## DEFENDANTS ADVANCED CORRECTIONAL HEALTHCARE, INC., LITISHA RAMUS, DR. DANIEL HEKMAN, JULIE SIECZKOWSKI, AND SARA HOFFMANN'S <u>REPLY</u> BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

        Defendants Advanced Correctional Healthcare, Inc. ("ACH"), Litisha Ramus, Dr. Daniel Hekman, Julie Sieczkowski, and Sara Hoffmann ("ACH Defendants"), by their attorneys, Leib Knott Gaynor LLC, hereby submit the following reply brief in support of their motion for summary judgment.

## <u>INTRODUCTION</u>

        Mr. Lamb is understandably frustrated that he was not given the attention to his dental needs that he feels entitled to upon admission to the Racine County Jail. His frustration, however, does not establish the defendants' indifference to him. "A state officer is deliberately indifferent when he does nothing...or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). Here, the evidence is the opposite. As Mr. Lamb concedes, each defendant affirmatively assessed Mr. Lamb and made recommendations—including pain relief— based on their training and abilities. Mr. Lamb is presuming indifference as an explanation for the

defendants' conduct when the undisputed facts demonstrate that each defendant addressed his complaints thoughtfully and to the best of their abilities within the scope of their professional licensing.

It is unfortunate that Mr. Lamb could not see a dentist immediately upon his admission to the Jail. The undisputed evidence is that ACH sought to add additional dental providers in the Racine area, but was unsuccessful. (Dkt. 57, Ash Decl., ¶¶ 7-11). It is not the responsibility of the individually-named defendants to recruit dentists. They should not be held liable for failing to provide relief outside the scope of their professional responsibilities and licenses. *See Cullor v. Baldwin,* 830 F.3d 830, 838-39 (8th Cir. 2016)(holding supervisory defendants are entitled to qualified immunity where shortage of dentists was not created by those defendants).

And it was not an ACH *policy* that caused a back-up in dental services among inmates. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978). To the contrary, ACH's management staff has been working to obtain additional dental appointments for inmates. (Dkt. 57, Ash Decl., ¶¶ 8-9). The undisputed evidence is that the corporate intention is to secure more dental services. Mr. Lamb's personal experience does not evidence a custom, policy or practice on which a *Monell* claim can stand. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)(holding a single incident cannot be the basis for establishing that a practice or custom exists).

## ARGUMENT

Mr. Lamb's narrative does not establish indifference by the health care providers. In fact, Mr. Lamb's narrative concedes that he was seen promptly in response to his written complaints and that each assessment resulted in recommendations and, most often, attempts to make him more comfortable. (Dkt. 64, Brief in Opp., pp. 3-10 (describing appointments with medical staff)). He

2

Case 1:17-cv-00383-WCG    Filed 11/01/17    Page 2 of 10    Document 67

does not dispute the defendants' exercise of professional judgment within their fields. He simply takes issue with the reality that none of the individual defendants was in a position to immediately "fix" his dental needs in a definitive fashion. *See McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013)(noting that medical professionals are entitled to deference in their decisions unless no minimally competent professional would have responded similarly). He has failed to meet his burden of demonstrating their indifference.[1]

### I. THERE IS NO EVIDENCE THAT MR. LAMB SUFFERED A SERIOUS MEDICAL NEED.

Defendants dispute that Mr. Lamb was suffering from a serious medical condition during the relevant timeframe. Mr. Lamb, in response, asserts that he had a serious medical need from the date of admission to the Jail and that it was unceasing and unchanged until he was seen by a dentist.

Mr. Lamb suggests it should have been obvious that he had an emergent need for dental treatment upon his admission to the Jail on February 16, 2017. (Dkt. 64, Brief in Opp., pp. 2-3). He argues that the jailer performing an intake interview mistakenly entered "no" to the question, "Do you have a painful dental condition?" when the answer he gave was "yes." (Id. at pp. 2-3; Knott Decl., Dkt. 49-1, RCJ 5). Plaintiff fails to recognize, however, that a health care provider reviewing Mr. Lamb's chart would have reasonably concluded that his condition was of new onset after February 16, 2017, and that Mr. Lamb's account thereafter was inconsistent with the record. His circumstance was not nearly as cut-and-dried as Mr. Lamb believes it to have been. A provider would be required to discern which of two inconsistent stories was correct. That provider would not be indifferent if reasonably mistaken as to the history Mr. Lamb provided to the jailer.

---

[1] It appears that despite being given the text of the rules per Civil L.R. 56(a)(1)(B) plaintiff has not specifically opposed defendants' Proposed Findings of Fact or proposed his own findings. (Dkt. 47, Notice of Motion and Motion complying with local rules).

Mr. Lamb's account that he came to the Jail with a severe problem and intense pain is also inconsistent with his own Inmate Request Complaint (IRC) dated February 20, 2017, in which Mr. Lamb asserts, "I've had two (2) separate (sic) fillings fall out, and two (2) separate (sic) teeth crack in the past two days…" (PFOF ¶ 3; Knott Decl., 49-1, RCJ 11). He also claims to be "showing signs of infection." (Id.) His IRC suggests that his dental needs arose after admission to the Jail. Yet, when he was triaged by Nurse Julie Sieczkowski on February 23, 2017, he informed her his pain was of three (3) months duration. (PFOF ¶ 12; Knott Decl., 49-1, RCJ 12-13). Again, the providers interviewing Mr. Lamb and reviewing his chart (and his IRC) were forced to make sense of an unclear and inconsistent picture. They had reason to doubt Mr. Lamb's statements based on disagreement between his comments as recorded at intake and his own written submission suggesting the pain was of new onset.

Nurse Sieczkowski noted in her February 23, 2017 assessment that Mr. Lamb reported pain at 10/10 "on his back"[2] but was in no distress on examination, with no facial grimacing. (PFOF ¶¶ 12-14; Knott Decl., 49-1, RCJ 13). He reported in his IRC that he was demonstrating signs of infection, yet she did not locate any. (PFOF ¶ 16; Knott Decl., 49-1, RCJ 12). She was clearly trying to discern which of Mr. Lamb's stories was accurate. Based on the undisputed record, including Mr. Lamb's own written submission, his story was inconsistent. A provider who is required to discern the truth in the face of inconsistent information cannot be held deliberately indifferent.[3] *See Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.2d 766, 778 (7th Cir.

---

[2] Mr. Lamb asserts disingenuously that he reported pain at 10/10 associated with his dental condition. (Dkt. 64, Brief in Opp., p. 4). The medical record clearly demonstrates that the report of 10/10 pain was with respect to his chronic back condition. (PFOF ¶ 14; Knott Decl., 49-1, RCJ 13).

[3] In fact, the record is also consistent with the following narrative: Mr. Lamb was incarcerated at an institution in Illinois that makes inmates pay for their dental care. He had no emergent dental need, so reported at intake no dental pain. (Knott Decl., Dkt. 49-1, RCJ 5). He did, however, have a chronic dental condition—a filling or two had fallen out at some point in time—so upon realizing that the Racine County Jail would pay for dental services he immediately reported severe dental pain in order to obtain service before he was returned to the Illinois institution. His story,

2014)(discussing subjective element of deliberate indifference); *see also Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

## II. PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY DEFENDANT WAS DELIBERATELY INDIFFERENT.

Each of the individual defendants disputes that his or her responses to Mr. Lamb's complaints constitute deliberate indifference. Mr. Lamb, in response, merely demonstrates that the individually-named defendants responded to each and every request in a timely manner and offered therapy, interventions and comfort measures consistent with their professional licenses.

### 1. JULIE SIECKOWSKI, R.N.

Nurse Julie Sieczkowski saw Mr. Lamb on a single day, February 23, 2017, and found him to be "in no distress." (PFOF ¶ 13; Knott Decl., Dkt. 49-1, RCJ 12-13). Mr. Lamb reported subjective complaints of "back pain since Feb 2015" and "dental pain for an approximated three months" (Id. ¶ 12). Mr. Lamb was noted to be in no distress on examination, with no facial grimacing, a steady gait and no difficulty ambulating. (Id. ¶ 13). While he verbalized a "10/10" pain scale rating regarding his back pain, he showed no outward signs of discomfort. (Id. ¶ 14). On assessment of his dental complaints, she noted he had lost fillings in teeth #1, and #13, but also noted that the surrounding tissues were "moist and pink" with no odor noted at the time of the assessment, indicating no infection was present. (Id. ¶ 15).

Opposing Nurse Sieczkowski's motion, Mr. Lamb attempts to argue with her subjective findings. (Dkt. 64, Brief in Opp., 4-5). Nurse Sieczkowski's frame of mind on that date, however, cannot be disputed: She found to him have a very inconsistent story, chronic dental pain of long

---

however, was inconsistent. He reported both an acute event and chronic dental pain. (PFOF ¶¶ 3-5; Knott Decl., Dkt. 49-1, RCJ 11-12). He repeated the requests, ultimately filing this lawsuit, in order to obtain service before he was transferred to Illinois. He succeeded.

standing, and "no outward signs of discomfort." (PFOF ¶ 14). Mr. Lamb did not demonstrate an urgent need for dental care.

Nurse Sieczkowski did not demonstrate indifference as a matter of law. She documented her findings and referred Mr. Lamb for assessment by the mid-level provider, Litisha Ramus, who assessed Nurse Sieczkowski's findings the same day. (Id. ¶ 18). She took a reasonable measure, which resulted in orders for a soft diet for seven (7) days, Oragel for topical treatment of dental pain, and Tylenol (acetaminophen) 1000 mg, twice daily for three (3) days. (PFOF ¶ 22).

There was nothing more Nurse Sieczkowski could have done for Mr. Lamb on February 23, 2017, and she never saw him again. All claims against her should be dismissed.

### 2. SARA HOFFMANN, R.N.

Mr. Lamb similarly misunderstands the scope of Nurse Hoffmann's involvement with him and the limitations of her license. She evaluated Mr. Lamb on March 1, 2017, and documented her findings in Dental and Medical Progress Notes. (PFOF ¶ 37). She noted "erythema present at the gum line," which could be a sign of possible infection. (Id. ¶ 38). Like Nurse Sieczkowski, she referred Mr. Lamb for assessment by Ms. Ramus, who took measures to provide additional comfort, including the prescribing of an antibiotic that succeeded in eradicating the infection. (Id. ¶¶ 39-40).

Opposing her dismissal, Mr. Lamb documents the benefits of Nurse Hoffmann's interactions with him. (Dkt. 64, Brief in Opp., pp. 9-10). Her referral resulted in several comfort measures: an extra mattress, a prescription for Tylenol, continuation of the soft diet and a prescription for Amoxicillin, an antibiotic, that proved successful in eliminating Mr. Lamb's swollen tissue and any infection. (Id. ¶ 49). Again, there is nothing more that Nurse Hoffmann

could do for Mr. Lamb other than to refer him to the Nurse Practitioner. All claims against her should be dismissed.

### 3. DANIEL HEKMAN, M.D.

Mr. Lamb concedes that Dr. Hekman did not ignore him, but accuses Dr. Hekman of prescribing "an easier and less efficacious treatment" in violation of his civil rights. (Dkt. 64, Brief in Opp., pp. 12-16). Mr. Lamb cannot claim that Dr. Hekman was indifferent or failed to exercise medical judgment as a matter of law.

Again, Mr. Lamb is refusing to accept the reality of what the provider subjectively observed and documented. When Dr. Hekman saw Mr. Lamb on March 9, 2017, his primary complaint was *knee pain and instability.* (PFOF ¶ 49). He concluded that Mr. Lamb's lateral collateral ligament (LCL) may need support, so requested that the nursing staff obtain a knee brace (neoprene sleeve) for him. (Id. ¶ 6). Mr. Lamb has no complaints about Dr. Hekman's attention to his knee problem, conceding he was not indifferent to that need.

Mr. Lamb also informed Dr. Hekman he had dental pain. (Dkt. 50, Hekman Decl. ¶ 4). Dr. Hekman personally assessed Mr. Lamb's dental complaints, including the history provided in the record. (Dkt. 50, Hekman Decl. ¶¶ 8-10; *See also* Knott Decl., Ex. A at RCJ 30). He noted that Mr. Lamb had a chipped tooth and that he appeared to have lost a filling on the upper left side. (Id.) Dr. Hekman did not observe that two fillings had fallen out as Mr. Lamb asserts.

Fighting the medical evidence, Mr. Lamb asserts that he continued to demonstrate signs of an infection when he was seen by Dr. Hekman on March 9. (Dkt. 64, Brief in Opp., p. 15). But Dr. Hekman did not see signs or symptoms of infection because the antibiotic that Ms. Ramus had ordered was effective. (PFOF ¶ 49).

Dr. Hekman subjectively believed that Mr. Lamb was coping sufficiently with any dental pain and that transfer to an emergency room or use of narcotics was not indicated. (Dkt. 50, Hekman Decl. ¶ 11). He ordered that Mr. Lamb's soft diet be continued and that he receive Tylenol 500 mg twice daily for 30 days. (Id.) Mr. Lamb makes no argument that his orders were not appropriate if, as Dr. Hekman indisputably believed, Mr. Lamb was coping well and not in need of emergency dental services. He was not indifferent as a matter of law.

Like the other medical providers, Dr. Hekman is not a dentist and cannot provide dental services within the scope of his license. He did not perceive a dental emergency, and if he had he was no better placed than any of the other defendants to accelerate the contracted dentist's schedule. He was not indifferent as a matter of law.

### 4. LITISHA RAMUS, A.P.N.P.

Ms. Ramus reviewed Nurse Sieczkowski's findings on February 23, 2017, and responded appropriately. Mr. Lamb was noted to be in no distress on examination, with no outward signs of discomfort. (PFOF ¶ 13). There were no signs of infection. (Id. ¶ 19). Ms. Ramus ordered reasonable interventions and comfort measures. She ordered that he be placed on a soft diet for seven (7) days, prescribed Oragel for topical treatment of dental pain and Tylenol (acetaminophen) 1000 mg, twice daily for three (3) days. (Id. ¶ 22).

Like Nurse Sieczkowski, Ms. Ramus was forced to evaluate the plausibility of Mr. Lamb's inconsistent and counter-intuitive responses. She noted, for example, that he reported multiple chronic conditions that caused him pain rather than a single complaint of a severe nature. In addition, Mr. Lamb continually emphasized *the cost* of treatment, which he found unfair, and he declined pain relief medications if he was required to pay for them. (PFOF ¶¶ 33-36). Ms. Ramus was justified in her subjective belief that Mr. Lamb's condition was not an emergency.

Finally, like Dr. Hekman and the other providers, Nurse Practitioner Ramus was not in a position to offer dental services or accelerate the availability of dental services. The measures she took to assist Mr. Lamb demonstrate that she was not deliberately indifferent as a matter of law.

### III. PLAINTIFF HAS FAILED TO DEMONSTRATE THE EXISTENCE OF AN UNCONSTITUTIONAL POLICY.

It is difficult to discern what policy Mr. Lamb is alleging is unconstitutional. He asserts on the basis of his own experience only that ACH has a "pull only" policy. (Dkt. 64, Brief in Opp., p. 21). He offers no evidence other than his own speculation that such policy exists. His argument is insufficient as a matter of law. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010)(holding that a single incident cannot be the basis for establishing that a practice or custom exists).

If such a policy were to exist, it would be directly contrary to ACH's training, which specifically states that "ACH does not provide, encourage or condone 'blanket' policies for medical care. This includes dental services provided on and off-site." (Dkt. 49-3). The training unequivocally provides that ACH practitioners are required to exercise their own professional judgment in rendering care. (Id.)

Mr. Lamb ignores the fact that the dentist that he saw, Dr. Rivas, was an independent practitioner and not an employee of ACH. If Dr. Rivas elected to forego other treatment in favor of pulling his teeth, it would be Dr. Rivas' policy—not ACH's.

Mr. Lamb has also asserted that ACH has a policy of "inadequate screening procedures" and "lack of available dental services." (Dkt. 64, Brief in Opp., p. 21). He does not elaborate on the screening procedures he believes should have been provided, but it is notable that he was seen and assessed repeatedly. Mr. Lamb was prevented from seeing a dentist because he did not

demonstrate an urgent need and because of the very limited supply of dental services available in the Racine market for inmates. To the extent he was delayed in obtaining dental services, it had nothing to do with screening procedures.

Finally, Mr. Lamb has not cited a case suggesting that a county jail is required by the Constitution to have a dentist on staff. The policy of utilizing an outside provider for dental care is not unconstitutional.

## CONCLUSION

For the reasons provided herein Advanced Correctional Healthcare, Inc., Litisha Ramus, Dr. Daniel Hekman, Julie Sieczkowski, and Sara Hoffmann respectfully request the Court grant their motions for summary judgment dismissing plaintiff's case with prejudice.

Dated this 1st day of November, 2017.

**LEIB KNOTT GAYNOR LLC**

*/s/ Douglas S. Knott*
Douglas S. Knott, State Bar No. 1001600
Cory J. Brewer, State Bar No. 1105913
Attorneys for ACH Defendants
219 N. Milwaukee Street, Suite 710
Milwaukee, WI 53202
Telephone: (414) 276-2102
Fax (414) 276-2140
Email   dknott@lkglaw.net
             cbrewer@lkglaw.net