UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CASEY LAMB,

        Plaintiff,

v.                                                   Case No. 17-C-383

ADVANCED CORRECTIONAL HEALTHCARE, INC., et al.,

        Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Casey Lamb, who is representing himself, filed this action under 42 U.S.C. § 1983, alleging that Defendants Advanced Correctional Healthcare, Inc. ("ACH"), Julie Sieczkowski, Litisha Ramus, Sarah Hoffman, and Dr. Dan Hekman (collectively, "the Individual Defendants"), and Racine County were deliberately indifferent to his serious medical need for dental treatment. Lamb, who was serving an Illinois prison sentence, was incarcerated at the Racine County Jail at the time he filed his complaint, but he has since been returned to Illinois and completed his sentence. This matter comes before the court on two motions for summary judgment, one by ACH and the Individual Defendants (ECF No. 47) and the other by Racine County (ECF No. 73). For the reasons stated below, both motions will be granted.

## BACKGROUND

What follows is a statement of the undisputed facts as set forth in the parties' proposed findings of fact, as well as the documentary evidence submitted by the parties. The Illinois Department of Corrections transferred Lamb to the Racine County Jail on February 16, 2017. ACH Defs.' Proposed Findings of Fact (ACH PFOF) ¶ 1, ECF No. 52. On a medical screening form

completed at the jail at the time of Lamb's transfer, a box is checked "no" in response to the question "Do you have a painful dental condition," but Lamb disputes this and states that he answered "yes." ACH PFOF ¶ 2 (citing ECF No. 49-1 at 5); Lamb's Proposed Findings of Fact (Lamb PFOF) ¶ 1, ECF No. 69.

Lamb submitted two Inmate Request/Complaint forms on February 20, 2017, just a few days after he arrived at the jail. ACH PFOF ¶ 3 (citing ECF No. 49-1 at 11). The first stated that two fillings in his teeth had fallen out since he had arrived at the jail, that he had multiple cracks in his teeth leaving "exposed nerve endings," that he was experiencing pain, and that these teeth were showing signs of infection that he feared could lead to more serious complications. *Id.* ¶¶ 4–5 (citing ECF No. 49-1 at 11). He asked for pain medication, antibiotics, an oral rinse, and to see a dentist as soon as possible "for extractions/amalgams." *Id.* ¶ 6. Lamb's second request that day concerned a request to obtain a second mattress related to his back injuries. *Id.* ¶ 9.

Defendant Registered Nurse Sieczkowski examined Lamb on February 23, 2017. *Id.* ¶ 11; *see also* ECF No. 49-1 at 12–13. Lamb reported chronic dental pain that had lasted at least 3 months. ACH PFOF ¶ 12; ECF No. 49-1 at 12. Sieczkowski's treatment notes state that two fillings were missing, that Lamb's gums were moist and pink, and that Lamb reported that his teeth were very sensitive and tasted and smelled of decay. ACH PFOF ¶ 15; ECF No. 49-1 at 12. Defendant Advanced Practice Nurse Prescriber (APNP) Ramus reviewed Sieczkowski's assessment that same day. ACH PFOF ¶ 18. Her review articulated a specific plan to address Lamb's dental needs, prescribing a soft diet for 7 days, an oragel packet each day for 7 days, and 1,000 mg of Tylenol for 3 days. *Id.* ¶ 22; ECF No. 49-1 at 13.

The next day (February 24, 2017) Lamb filed another Inmate Request form. ACH PFOF ¶ 23; ECF No. 49-1 at 14. In the request, Lamb claimed that during intake he was told that a nurse would evaluate him free of charge, that he only received an evaluation from a nurse when he filed a request form, and that he objected to the $10.00 charge he received for the evaluation. ACH PFOF ¶¶ 24–25; ECF No. 49-1 at 14. That same day, APNP Ramus reviewed Lamb's request and wrote a response explaining that, at the jail, corrections staff performs a routine medical screening during intake, it is not jail policy to provide a routine medical evaluation within 72 hours of booking, and the jail charges $10.00 for non-emergency medical evaluations by a medical staff member. ACH PFOF ¶¶ 26–27, 29; ECF No. 49-1 at 15.

Two days later (February 26, 2017), Lamb filed an Inmate Request form inquiring into "the status of [his] dental needs." ACH PFOF ¶ 30; ECF No. 49-1 at 16. He wrote, "I *need*, not want to see a D.D.S. for extractions/amalgams and any other necessary work/treatment A.S.A.P." ECF No. 49-1 at 16. The following day (February 27, 2017), he submitted another Inmate Request form, this time requesting that he be given ibuprofen for his dental and back pain. ACH PFOF ¶¶ 33, 35; ECF No. 49-1 at 18. He clarified, however, that he did not want ibuprofen if he would be charged for it. ACH PFOF ¶ 34. Lamb filed yet another Inmate Request form the next day (February 28, 2017), this time asking that his soft diet be continued indefinitely past March 3 and that he receive another Tylenol prescription, although he added that he did not want to pay for any medication. *Id.* ¶ 36; ECF No. 49-1 at 19.

Defendant Registered Nurse Hoffman personally evaluated Lamb on March 1, 2017. ACH PFOF ¶ 37. Her dental progress notes indicate that Lamb's teeth were sensitive to hot and cold, that he had erythema present at the gum line (a possible sign of infection), and that there was

3

inflammation present on his right jaw. *Id.* ¶ 38; ECF No. 49-1 at 20. Defendant APNP Ramus reviewed NP Hoffman's evaluation and concluded that Lamb had a dental abscess. ACH PFOF ¶ 39; ECF No. 49-1 at 21. Ramus ordered the extra mattress Lamb had requested and prescribed 1,000 mg of amoxicillin for 10 days, 1,000 mg of Tylenol for 5 days, and an extension of his soft diet for 14 days. ACH PFOF ¶¶ 40–41.

In an Inmate Request form on March 6, 2017, Lamb requested a knee brace and tennis shoes, adding that he would be willing to pay for the brace, shoes, and medication, as well as another assessment, if necessary. ACH PFOF ¶¶ 42–43. On March 7, 2017, Lamb filed an Inmate Complaint form regarding his desire for dental care. *Id.* ¶ 44; ECF No. 49-1 at 28. Reiterating his desire for an immediate dental appointment, he stated that he had filed a federal complaint under § 1983 alleging that jail officials had shown deliberate indifference to his serious dental needs. ACH PFOF ¶ 45.

Defendant Dr. Hekman examined Lamb on March 9, 2017. *Id.* ¶ 46. In addition to addressing Lamb's physical complaints, Dr. Hekman observed that Lamb was missing fillings and had dental nerves exposed. ECF No. 49-1 at 30. He therefore ordered that Lamb continue his soft diet indefinitely, and he prescribed 900 mg of Tylenol for 30 days. ACH PFOF ¶ 47. Lamb does not dispute that Dr. Hekman did not note signs or symptoms of infection during the March 9 examination, indicating that the course of antibiotics prescribed on March 1 had effectively treated the erythema and inflammation previously observed. *Id.* ¶ 48. Subsequently, on March 15, 2017, APNP Ramus ordered a dental referral for Lamb in response to his continued reports of pain following his examination by Dr. Hekman. ACH PFOF ¶ 50 (citing ECF No. 51 ¶¶ 27–29).

4

Lamb eventually saw outside dentist Dr. Adrian Rivas on May 17, 2017. ACH PFOF ¶ 51. Some of the teeth at issue were extracted during that appointment. *Id.* ¶ 50. Lamb objects to the characterization of the extraction by ACH and the Individual Defendants, noting that he required further dental treatment following his appointment with Dr. Rivas. ECF No. 70 ¶ 51. By June 2017, Lamb left the Racine Count Jail and returned to custody in Illinois. *See* ECF No. 23. Additional relevant undisputed factual material will be discussed in the analysis below.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation mark omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Lamb's claims arise out of the response to his complaints of dental pain after he arrived at the Racine County Jail. With regard to the Individual Defendants, he alleges that each was

5

deliberately indifferent to his serious dental needs during the three months between when he was booked into the jail and when he eventually saw a dentist. As for ACH and Racine County, Lamb brings a claim under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), alleging that the lack of an on-site dentist at the jail and the jail's purported "pull only" dental policy violated his constitutional rights. The court will address each argument in turn.

**I. Individual Defendants**

A plaintiff may prevail on a claim for relief under 42 U.S.C. § 1983 by showing that he was (1) deprived of a federal right (2) by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Chatham v. Davis*, 839 F.3d 679, 684 (2016) (alterations in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). " A prison official may be liable for deliberate indifference only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). To succeed on a deliberate indifference claim, a prisoner must prove that he "suffered from '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Id.* (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)).

In the Seventh Circuit, it is well established that "dental care is one of the most important medical needs of inmates" and that "dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (quoting *Wynn v. Southward*, 251 F.3d 588, 593 (2001)). The Individual Defendants argue that Lamb's deliberate indifference claim fails to meet the first prong of the test

because his dental pain was not objectively serious. They argue that various cases involving inmates with dental pain implicated an objectively serious medical need because the pain accompanied harmful secondary medical consequences, *see, e.g.*, *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (gum recession and bleeding), and they contend that no such consequences were present here.

The record, however, contains adequate information for the court to conclude that a dispute of material fact exists as to whether Lamb's circumstances implicated an objectively serious medical need. Lamb expressly disputes the assertion by ACH and the Individual Defendants that he denied having a serious dental need during his intake. ECF No. 70 ¶ 2. The dental progress notes from the physical examinations performed on February 23 and March 3, 2017, both show that Lamb reported his pain as "10/10" to the evaluating nurses. ECF No. 49-1 at 12, 20. There is no dispute that erythema and inflammation—signs of possible infection—were observed during his March 1 appointment. ACH PFOF ¶ 38. This evidence that Lamb's pain may have been related to a condition severe enough to give rise to infection is sufficient to create a dispute of material fact as to whether his dental condition was objectively serious.

Nonetheless, Lamb cannot succeed on his deliberate indifference claim because the undisputed facts defeat any argument that the Individual Defendants exhibited subjective indifference. "Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citing *Estelle*, 429 U.S. at 107); *see also Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016). Although "a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference," a plaintiff succeeds in proving the second prong only if the prison official's conduct was "'so blatantly

inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition." *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). As the following discussion shows, the undisputed facts demonstrate that none of the Individual Defendants acted with the subjective indifference to Lamb's condition necessary for him to succeed on a claim.

### A. Julie Sieczkowski and Sara Hoffman

Defendants NP Sieczkowski and RN Hoffman each encountered Lamb on only a single occasion. ACH PFOF ¶¶ 11, 37. On February 23, 2017, NP Sieczkowski examined Lamb and documented his complaints of pain at a "10/10" level, his reports of sensitive teeth, his missing fillings, and his assertion that he could taste and smell decay in his mouth. ECF No. 49-1 at 12. Importantly, she passed her evaluation of Lamb onto Defendant APNP Ramus, who immediately prescribed him a soft diet, oragel, and Tylenol. *Id.* at 13. On March 1, 2017, RN Hoffman examined Lamb and documented his sensitive teeth, missing fillings, erythema, inflammation on the jaw, and reports of bleeding on the gums and "10/10" pain. ECF No. 49-1 at 20. Like NP Sieczkowski, NP Hoffman's evaluation was reviewed that same day by APNP Ramus, who prescribed amoxicillin for his infection, another 5 days of Tylenol for the pain, and an additional two weeks of soft diet. *Id.* at 21.

The actions by NP Sieczkowski and RN Hoffman show that, upon becoming aware of Lamb's objectively obvious dental problems and his subjective reports of pain, each referred him to an individual with prescribing authority capable of taking action to address his concerns. By immediately referring Lamb's request to a person who actually took steps to alleviate his pain, neither of their actions after their single encounters with Lamb reflect subjective indifference. *See Grund v. Corizon*, No. 16-cv-96-TWP-MJD, 2017 WL 3894958, at *4 ("It is undisputed that

Murphy referred Grund's request to a doctor and that the doctor did write a restriction order. In so doing, Murphy did not ignore a risk to Grund or fail to respond appropriately to her complaints."). To the contrary, both nurses took steps within their power to secure treatment for Lamb as soon as they became aware of his pain. Such action reflects not disregard but *regard* for his serious medical need. Consequently, Lamb's deliberate indifference claims against NP Sieczkowski and RN Hoffman both fail.

### B. Dr. Dan Hekman

Like NP Sieczkowski and RN Hoffman, Dr. Hekman examined Lamb on only one occasion. ACH PFOF ¶ 46. His treatment notes for his March 9, 2017, examination demonstrate that he evaluated Lamb's complaints of dental pain as part of a general physical evaluation. ECF No. 49-1 at 30. With regard to Lamb's dental concerns, Dr. Hekman observed the presence of exposed dental nerves and at least one missing filling, and in response he prescribed an indefinite soft diet and the continuation of a low does of Tylenol for 30 days. *Id.* Following Lamb's course of amoxicillin prescribed on March 1, Dr. Hekman did not observe any signs of infection in Lamb's mouth. ACH PFOF ¶ 48.

"Mere dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to prove deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citing *Snipes*, 95 F.3d at 592). Indeed, as already noted, "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Id.* (citing *Dunigan ex rel Nyman v. Winnebago Cty.*, 165 F.3d 587, 592 (7th Cir. 1999)). Here, presented with evidence on March 9 that Lamb was experiencing dental pain, Dr. Hekman could observe that Lamb had tolerated the pain since at least February 23 and that there was no current sign of infection or

9

worsening of his condition. In fact, Lamb showed signs of improvement since his last examination. As a result, Dr. Hekman could reasonably conclude that Lamb's condition did not reflect an emergency requiring immediate referral to a dentist. However, by prescribing a continued soft diet and a 30-day Tylenol regimen, Dr. Hekman did take action to address Lamb's pain. Although Lamb may disagree with the course of treatment that Dr. Hekman chose, the fact that Dr. Hekman took action to reduce Lamb's pain as soon as he became aware of it means that he, too, did not exhibit subjective indifference.

### C. Litisha Ramus

Finally, APNP Ramus was the medical professional who had the most frequent contact with Lamb during his time in the Racine County Jail. The court has already discussed the various occasions on which she promptly responded to information regarding Lamb's dental pain. After the examinations by NP Sieczkowski and RN Hoffman on, respectively, February 23, 2017, and March 1, 2017, APNP Ramus prescribed measures commensurate to Lamb's objective needs: she prescribed a soft diet, oragel, and Tylenol after his first examination, and when the second examination revealed signs of erythema and infection, she prescribed an antibiotic as well. When Lamb objected to the $10.00 charge for the February 23 examination, she immediately wrote him a letter explaining the jail policy requiring the charge. ACH PFOF ¶¶ 25–27. And when Lamb's dental pain persisted following his March 9, 2017 examination by Dr. Hekman, APNP Ramus referred him on March 15, 2017, for dental services from an outside provider. *Id.* ¶ 50; ECF No. 51 ¶ 27–29.

It is true that "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 104–05). The undisputed facts show that, in

10

the 23 days between Lamb's first written complaint of dental pain on February 20 and APNP Ramus' March 15 referral, Lamb received three physical examinations by three different medical professionals, including one doctor. During that time, APNP Ramus prescribed pain medication and an antibiotic in response to the first two evaluations by nurses, and she ultimately referred Lamb to an outside dental provider when those initial measures failed to completely abate his dental pain. Rather than deteriorating, Lamb's condition actually *improved* when APNP Ramus prescribed an antibiotic in response to the signs of infection observed during his second examination. Under these circumstances, APNP Ramus' actions reflect not a subjective indifference to Lamb's dental pain but a reasonable effort to treat it internally before referring him to an external dentist less than a month after he first complained of pain. Because the undisputed facts show that APNP Ramus therefore was not deliberately indifferent to Lamb's serious medical needs, his deliberate indifference claims against all of the Individual Defendants fail.

## II. ACH and Racine County

In addition to his deliberate indifference claims against the Individual Defendants, Lamb also raises *Monell* claims against ACH and Racine County. Under *Monell*, an entity may be liable for "damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). "A private corporation that has contracted to provide essential government services is subject to at least the same rules that apply to public entities" under *Monell*. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc) (citing *Shields v. Ill' Dep't of*

11

*Corr.*, 746 F.3d 782, 789–90 (7th Cir. 2014)). By contract, ACH provides medical services to Racine County Jail inmates (ECF No. 57-1; *see also* Racine Cty. Proposed Findings of Fact (Racine PFOF) ¶ 23, ECF No. 74), so it may therefore be held liable under a *Monell* theory.

To make his *Monell* claim against ACH, Lamb raises two arguments: (1) that ACH's official policy of not keeping a dentist on site at the jail and having only limited off-site dental services violated his rights, and (2) that ACH's practices created, in practice, a "pull only" policy limiting dental treatment for inmates to extractions, rather than measures that might avoid removal of a tooth. As for Racine County, Lamb does not specify the nature of his claim, asserting only in general terms that, as the entity responsible for the operation of the jail and for contracting with ACH for medical services, the county's policies and practices must have contributed to the dental services available to inmates.

There is no rule requiring a county jail to incur the expense of having a dentist with a fully equipped office on site at the jail to treat inmates for dental needs, as long as the serious dental needs of inmates can be met in the community. As to a "pull only," or "extraction only" policy, the majority rule appears to be that "offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue." *Baughman v. Garcia*, 254 F. Supp. 2d 848, 877–78 (S.D. Tex. 2017) (citing cases); *see also Kopera v. Cook Cty. Bd. of Comm'rs*, Civ. No. 93-3934, 1994 WL 577238, at * 5 (N.D. Ill. Oct. 18, 1994) (rejecting a Cook County jail inmate's constitutional challenge to a policy that offered extraction only for complaints of dental pain). *But see Greywind v. Podrebarac*, No. 1:10-cv-006, 2011 WL 4750962, *7 (D. N.D. Sept. 12, 2011) ("There are other

12

cases, however, where the courts have suggested that 'extraction only' policies might violate the Eighth Amendment—in certain circumstances, or have concluded that the issue is an open one.").

Here, there is no need to decide whether such a policy is unconstitutional since Lamb has failed to introduce evidence that such a policy actually existed. In fact, the evidence establishes that neither ACH nor the County had such a policy. As part of its agreement to provide "comprehensive inmate health services" at the jail, ACH's contract with Racine County provides an express provision regarding inmate dental care: "ACH will provide dental triage screenings for county inmates in accordance with criteria established by a licensed dentist for the purpose of identifying inmates in need of serious dental services." ECF No. 57-1 at 2–3 (capitalization omitted). ACH has also submitted a copy of employee training materials explaining ACH's policy concerning dental care:

> ACH does not provide, encourage or condone "blanket" policies for medical care. Each plan of care is individualized and prescribed by a practitioner. This includes dental services provided on and off-site.
>
> Based on the location, symptoms and urgency of dental issues, the practitioner may opt to treat the patient with medications on-site or send the patient for off-site care. This decision is entirely up to the licensed practitioner. There is no set limit, restriction, or automatic rule on the number of times a patient must be treated in-house prior to being sent off-site for dental care.

ECF No. 49-3.

In a declaration by its Vice President of Compliance, ACH asserts that it contracts with a single dental provider in the Racine area who sees inmates on only two days each week, usually only one inmate each day. ECF No. 57 ¶ 6. In his brief, Lamb disputes this, claiming based on information and belief that ACH contracts with a second dental provider in the Racine area. ECF No. 64 at 22 (citing ECF No. 65 ¶ 16). Although ACH's Vice President of Compliance has

approached other dental providers in the Racine area, as well as a multi-state mobile dental clinic, she has not succeed in securing additional appointment slots for inmates. ECF No. 57 ¶¶ 8–10.

The difficulties obtaining such care for prisoners is not unique to the Racine County Jail. Jails, like prisons, are particularly difficult places to provide such care:

> Security concerns dictate that only one prisoner be in the examination room at a time, even if there's more than one chair, and that no prisoner be left alone, lest he try to use dental tools as weapons. Further exacerbating the problem, only emergency cases can be seen when the prison is in lockdown, and dentists can't accept prisoners' complaints at face value, as inmates often try to jump the line by exaggerating their symptoms.

*Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (*en banc*). Jails face additional obstacles. Outside dentists are reluctant to treat prisoners in their offices because of concern over the reaction of other patients. Combined with a shortage of dentists to meet the needs of prisoners, many of whom have not regularly seen a dentist before their incarceration, these considerations pose significant obstacles to county jails easily meeting their obligations to those placed in their custody.

Although the Seventh Circuit has not adopted a bright-line rule defining a "widespread custom or practice" in the *Monell* context, the court has observed that a plaintiff must provide proof of "more than one instance . . . or even three." *Thomas*, 604 F.3d at 303 (first quoting *Cosby v. Ward*, 843 F.2d 967, 938 (7th Cir. 1988); then citing *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir. 2002)). Specifically, this means that "the plaintiff must demonstrate that there is a policy at issue rather than a random event." *Id.*

Lamb has submitted no evidence to suggest that the dental services he received at the Racine County Jail—which the court has already concluded did not reflect deliberate indifference at the individual provider level—were consistent with a larger policy resulting in the wholesale denial of

14

adequate dental treatment to inmates. The undisputed facts show that Lamb received pain medication, antibiotics, and a soft diet during the 23 day period between when he first reported his dental pain and the day he ultimately received a referral to a dentist. Although Lamb did have to wait two months to finally see a dentist on May 17, 2017, after he received a referral on March 15, that wait was the product of the limited availability of dental appointments, a matter beyond ACH's control, rather than a deliberately indifferent policy. *See Peralta*, 744 F.3d at 1082 (reasoning that limited availability of dental services did not necessarily reflect "wanton" indifference to dental needs necessary for deliberate indifference claim). Indeed, to the extent that the record contains any evidence regarding ACH's general policies, it suggests that medical providers retained significant professional discretion and faced no top-down limitations on referrals to outside dental professionals. Lamb offers no evidence—such as examples of other inmates' failed efforts to obtain dental care—to prove that his experience reflected a larger policy of deliberate indifference to dental care at ACH.

In support of his argument that ACH imposed a "pull only" policy for dental treatment, Lamb relies on a comment made by Dr. Rivas in the treatment notes for Lamb's May 17, 2017 off-site dental examination. Dr. Rivas' notes from the May 17 appointment state: "[Treatment] options discussed with [patient]; explained to him that some of the teeth could be saved but that due to his legal status the only treatment we can offer to resolve his pain at this time would be an extraction; [patient] understood and accepted the [treatment]." ECF No. 49-2 at 1. But this comment does not establish that ACH or the County had a "pull only" policy. Given the paucity of available appointments and the possibility that an inmate will remain in the jail's custody for only a short period of time, it may be simply that Dr. Rivas reasonably concluded that Lamb's legal status limited his availability for multi-phase treatment requiring multiple appointments over the course of several

15

weeks. Notably, Lamb returned to custody in Illinois just weeks after his appointment, suggesting that the decision to extract his teeth was affected by his upcoming transfer. In any event, Dr. Rivas' comments cannot establish the existence of a policy in the face of the evidence showing no such policy existed. The undisputed facts therefore show not an unwritten "pull only" policy but a random circumstance involving a particular inmate who obtained dental treatment during a stay of less than four months in the Racine County Jail.

Finally, Lamb's *Monell* claim with regard to Racine County has no more merit than his claim against ACH. At the outset, it is clear that Lamb failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a). The Racine County Jail provides each inmate with a Handbook, which explains the grievance procedure inmates must follow to remedy complaints over the conditions of their confinement, including complaints about medical or dental care. ECF No. 77-3 at 13–14. The inmate is required to file a grievance with Jail staff within seven days of the event giving rise to it. Each grievance is to address only one issue. The Jail Sergeant makes the initial determination of the grievance, and if the inmate is not satisfied with the Jail Sergeant's determination, he must appeal to the Jail Captain within seven days of the denial. *Id.*

In support of its argument that Lamb failed to exhaust his administrative remedies as to his Monell claim against it, the County acknowledges that Lamb filed eighteen complaints directed to medical staff requesting medical attention, but it asserts that Lamb never filed a complaint with staff regarding medical or dental policies or procedures. In response, Lamb points to a complaint dated February 3, 2017, to the attention of "Jail Captain," but bearing a received date of March 2, 2017. ECF No. 82-1. The document states:

16

> I am appealing a inmate complaint (I guess this is also your grievance) that was submitted to the Supervisor of Medical Services. My two main issues are that a nurse is supposed to do a intake med. screening within 72 hours of a inmates initial intake/transfer/booking <u>free of charge</u> and meet any medical needs of the inmate. Not only did a nurse not do my intake med. screening (a Deputy who's not a trained medical professional did) but I was forced to pay $10 twice to have only some of my medical issues met (not my dental). In essence, I had to pay $20 to get two medical/dental screenings performed by a nurse two weeks after coming here and only some of my needs were met, not all. I was the $20 refunded. In addition, you have no staff dentist. I have emergency dental issues that need attention now, not in 2 days, weeks or months. You are in violation of federal laws, state laws, the 8th Amendment of the U.S. Const. I have put you on constructive and actual notice of these violations and if not remedied I am filing a § 1983 federal lawsuit.

*Id.* As the County points out, however, the appeal is to follow a complaint submitted to Jail staff who then refer it to the Jail Sergeant for the initial determination. Only then is the inmate's appeal to the Jail Captain to be submitted. Lamb never submitted a complaint to Jail staff regarding his complaint, though he seems to have complained to medical staff. ECF No. 1-2 at 3, 4. It is also clear from the face of his attempted appeal, however, that the complaint does not comply with the rule requiring that each complaint or grievance address only one issue. Thus, Lamb failed to properly exhaust his administrative grievances, which by itself constitutes grounds for dismissal. *See Woodford v. Ngo*, 548 U.S. 81, 91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). But even on the merits, Lamb's claim against the County fails.

The Racine County Sheriff's Department has promulgated a Dental Care policy "[t]o ensure proper dental care for the inmates of the Racine County Jail." ECF No. 77-4. The policy explains that dental emergencies should be handled like any other medical emergency, meaning "[a]ny inmate who is obviously in need of immediate dental care shall be referred to the medical staff who will

17

make appropriate arrangements." *Id.* Additionally, the policy delegates significant authority to the jail's physician, explaining that "[t]he jail physician will be responsible for identifying significant dental problems and designing a preventative dental care program" and "shall treat any dental complaint as a medical complaint, and determine whether the inmate requires the attention of a dentist." *Id.* All of the policy provisions focus on the health of the inmate in emergent and non-emergent situations and do not purport to limit the discretion of the jail physician or any dentist who receives a referral. As with ACH, the only evidence Lamb has presented regarding Racine County's dental policies pertains to his own experience, which is insufficient to support a claim.

## CONCLUSION

For the reasons given above, the motion for summary judgment by ACH and the Individual Defendants (ECF No. 47) is **GRANTED** and the motion for summary judgment by Racine County (ECF No. 73) is **GRANTED**. This matter is dismissed, and the Clerk is directed to enter judgment in favor of the defendants.

**SO ORDERED** this 27th day of June, 2018.

> s/ William C. Griesbach
> William C. Griesbach, Chief Judge
> United States District Court